UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT BOULANGER,<br><br>Plaintiff,<br><br>v.<br><br>LANDMARK INFRASTRUCTURE PARTNERS LP, ARTHUR BRAZY, JR., STEVEN SONNENSTEIN, SADIQ MALIK, THOMAS CAREY WHITE III, GERALD TYWONIUK, and KEITH BENSON,<br><br>Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**BACKGROUND**

1. This action concerns a proposed transaction ("Proposed Transaction") announced on August 23, 2021, pursuant to which Landmark Infrastructure Partners LP ("Landmark" or the "Company") will merge with Landmark Dividend LLC.

2. On August 21, 2021, Landmark's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into a transaction agreement (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Landmark's unitholders will receive $16.50 in cash for each unit of Landmark common unit they own (the "Merger Consideration").

3. On October 6, 2021, in order to convince Landmark's unitholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading Proxy

Statement (the "Proxy") with the United States Securities and Exchange Commission ("SEC").

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

5. In addition, a special meeting of Landmark's unitholders will be held to vote on the Proposed Transaction (the "Unitholder Vote"). It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Unitholder Vote so Landmark's unitholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

**JURISDICTION & VENUE**

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous

activities that had an effect in this District. Additionally, the Company's shares trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, a Landmark unitholder.

10. Defendant Landmark is a Delaware limited partnership and a party to the Merger Agreement. Landmark units are traded on the NASDAQ under the ticker symbol "LMRK."

11. Defendant Arthur Brazy, Jr. is Company's Chief Executive Officer and a director of the Company.

12. Defendant Steven Sonnenstein is the Chairman of the Board of Directors.

13. Defendant Sadiq Malik is a director of the Company.

14. Defendant Thomas Carey White III is a director of the Company.

15. Defendant Gerald Tywoniuk is a director of the Company.

16. Defendant Keith Benson is a director of the Company.

## FACTS

17. Landmark is a publicly traded limited partnership that acquires, develops, owns and manages a portfolio of real property interests and infrastructure assets that are leased to companies in the wireless communication, digital infrastructure, outdoor advertising and renewable power generation industries. Landmark holds substantially all of its assets in a consolidated subsidiary, Landmark Infrastructure, Inc., a Delaware corporation ("REIT Subsidiary")

18. Landmark Dividend is a Delaware limited liability company and the sponsor of the Partnership and the sole member of the Partnership GP.

19. On August 21, 2021, Landmark's Board caused the Company to enter into the Merger Agreement.

20. According to the press release announcing the Proposed Transaction:

**Landmark Infrastructure Partners LP to be Acquired by its Sponsor, Landmark Dividend LLC**

\*\*\*

EL SEGUNDO, Calif., Aug. 23, 2021 – Landmark Infrastructure Partners LP ("Landmark," or the "Partnership") (NASDAQ: LMRK) today announced that, following lengthy negotiations between the Conflicts Committee of the Board of Directors of Landmark Infrastructure Partners GP LLC (the "General Partner" or "GP") (the "Conflicts Committee") and the Partnership's sponsor, Landmark Dividend LLC ("LD"), the Partnership and LD have entered into a definitive agreement under which the Partnership will be acquired by LD.

Under the terms of the agreement, Landmark public unitholders will receive $16.50 in cash for each common unit owned, representing a premium of 38% to the Partnership's unaffected unit price on May 14, 2021, the last business day prior to the announcement of LD's proposed acquisition of Landmark for $13.00 per common unit. The agreement between Landmark and LD reflects one of the highest premiums ever paid in a transaction where a GP purchases its MLP.

LD owns, among other things, 100% of the membership interests in the General Partner and 13.2% of the common units representing limited partner interests in the Partnership. After consultation with its independent legal and financial advisors, and consistent with the recommendation of the Conflicts Committee that is composed entirely of independent directors of the GP, the agreement was reviewed and unanimously approved by the full Board of Directors of the GP. Both the Conflicts Committee and the full Board of Directors of the GP determined the transaction with LD to be in the best interests of the Partnership.

\*\*\*

TAP Securities LLC and RBC Capital Markets are acting as financial advisors and Simpson Thacher & Bartlett LLP and Latham & Watkins, LLP are acting as legal advisors to LD. Truist Securities Inc. is acting as left lead arranger and joint bookrunner, and Citizens Bank N.A., RBC Capital Markets and TD Securities (USA) LLC are acting as joint lead arrangers and joint bookrunners for the debt financing. Evercore is acting as exclusive financial advisor and Gibson, Dunn & Crutcher LLP is acting as legal advisor to the Conflicts Committee.

21. The Merger Consideration is unfair because, among other things, the intrinsic

value of the Company is in excess of the amount the Company's unitholders will receive in connection with the Proposed Transaction.

22. It is therefore imperative that the Company's unitholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

23. Section 6.1 of the Merger Agreement has a "no solicitation" clause that prevents Landmark from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

> **Preparation of the Partnership Proxy Statement and Schedule 13E-3; No Solicitation; Partnership Unitholder Meeting.**
>
> (d) Except as expressly permitted by this Section 6.1, the Partnership Parties shall not, and shall cause their respective Subsidiaries and their respective Representatives not to, directly or indirectly (i) withdraw, modify or qualify, or propose to publicly withdraw, modify or qualify, in a manner adverse to the Buyer Parties, the Board Recommendation or the Committee Recommendation or (ii) fail to include the Board Recommendation in the Partnership Proxy Statement (the taking of any action described in clauses (i) or (ii) being referred to as a "Partnership Adverse Recommendation Change").

24. In addition, Section 7.3 of the Merger Agreement requires Landmark to pay up to a $7,300,000 "termination fee" in the event this agreement is terminated by Landmark and improperly constrains the Company from obtaining a superior offer. Such a termination fee is excessive and unduly restrictive to Landmark's ability to consider other offers.

25. Defendants filed the Proxy with the SEC in connection with the Proposed Transaction.

26. The Proxy omits material information concerning Landmark's financial projections.

27. First, with respect to Landmark's financial projections, the Proxy fails to

5

disclose: (1) all line items underlying (i) Total Revenue; (ii) EBITDA; (iii) Adjusted EBITDA; and (iv) Distributable Cash Flow

28. The disclosure of projected financial information is material information necessary for unitholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company. In addition, this information is material and necessary for unitholders to understand the financial analyses performed by the companies' financial advisors rendered in support of any fairness opinion.

29. Second, the Proxy omits material information regarding the analyses performed by Landmark Conflicts Committee's financial advisor Evercore Group. LLC ("Evercore") in connection with the Proposed Transaction.

30. With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy fails to disclose (i) the individual inputs and assumptions underlying the discount rate range of 6.5 % to 7.5 %; and (ii) the individual inputs and assumptions underlying the perpetuity growth rate range of 2.0 % to 3.0 %; and (iiii) the individual inputs and assumptions underlying the EBITDA exit multiples range of 13.0x to 17.0x.

31. With respect to Evercore's *Discounted Distribution Analysis*, the Proxy Statement fails to disclose the (i) individual inputs and assumptions underlying the terminal yield rate range of 6% to 7.5%, (ii) cost of equity of 12.5% to 14.5% based upon CAPM, and (iii) cost of equity of 10.5% to 12.5%.

32. With respect to Evercore's *Precedent M& A Transaction Analysis,* the Proxy fails to disclose (i) the individual multiples and financial metrics of each transaction Evercore observed in its analyses and (ii) the inputs and assumptions underlying the 7% discount rate to calculate the value implied by the Enterprise Value to EBITDA multiple.

33. With respect to Evercore's *Peer Group Trading Analysis*, the Proxy fails to disclose the individual multiples and metrics for the companies observed in the analysis.

34. With respect to Evercore's *Premiums Paid Analysis*, the Proxy fails to disclose the individual premiums paid in the transactions.

35. Third, the Proxy Statement fails to disclose the members of the Conflicts Committee.

36. The omission of the above-referenced material information renders the Proxy false and misleading.

37. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's unitholders.

**CLAIMS FOR RELIEF**

**COUNT I**

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. Defendants issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information

regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders as required.

42.     The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Proxy.  Defendants were also negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

43.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

### COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

48. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or

gave their input on the content of those descriptions.

49.   By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.   As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.   Plaintiff has no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.   Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.   Directing the Individual Defendants to disseminate a proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.   Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: October 7, 2021

                                   **MOORE KUEHN, PLLC**

                                   */s/Justin Kuehn*
                                   Justin A. Kuehn
                                   Fletcher W. Moore
                                   30 Wall Street, 8th floor
                                   New York, New York 10005
                                   Tel: (212) 709-8245
                                   jkuehn@moorekuehn.com
                                   fmoore@moorekuehn.com
                                   *Attorneys for Plaintiff*